IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

        Plaintiff,

v.                                                       CASE NO. 3:21-CR-49-02

DIANA TOEBBE,

        Defendant.

### DEFENDANT DIANA TOEBBE'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO REOPEN DETENTION HEARING

The Defendant, Diana Toebbe, by counsel, states the following in reply to the Government's response to her motion to reopen her detention hearing in the above-captioned case:

**I.    Standard of Review.**

Mrs. Toebbe brings this Motion in a renewed effort to be released on bond while her case remains pending. "In our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Solerno*, 481 U.S. 739, 755. The Bail Reform Act requires the Court to impose the "least restrictive" means of insuring the appearance of the person and safety to the community. 18 U.S.C. § 3142 (c)(1)(B). Only in "rare circumstances should release be denied," and any "doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F. 2d 1118, 1121 (9th Cir. 1991). In light of newly discovered exculpatory evidence, reconsideration and review of the detention would be appropriate especially where the defendant now proffers a substantial cash bond to assure her appearance. In the context of the Bail Reform Act, it is incumbent upon Mrs. Toebbe to show that there exists "information that was not known to the movant at the time of the hearing and

that has a material bearing" on the issue of detention. *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020). Here, the existence of new exculpatory evidence that plainly undercuts the Government's theories of guilt and flight risk certainly meets this legal standard. Here, reopening the detention hearing is legally required as Mrs. Toebbe's liberty interest remain paramount and the facts known to the parties and thus the Court have changed in a manner that substantially undercuts the Government's argument for detention.

**II. The Additional Text Messages Showing that Mrs. Toebbe's Plans to Leave the Country were Unrelated to the Charges Against Her, the Specific Contents of which Were Known Only to the Government at the Time of Her Detention Hearing, Constitutes New Evidence to Support Reopening the Hearing.**

After introducing redacted and misleading text messages at Mrs. Toebbe's detention hearing, which had the intended effect of making it appear that her reason for wanting to leave the country – and thus be a flight risk - was related to the charges in this case, the Government now argues that the previously undisclosed messages do not justify reopening her detention hearing because: (1) her counsel "already proffered" that her reason was politically motivated; and (2) besides, she was already familiar with the messages because she was a party to the conversation with her husband. The Court should reject these arguments. Both of these arguments fail and provides no sanctuary for the Government's decision to withhold exculpatory information from the defense and the Court.

First, while Mrs. Toebbe was admittedly a party to the conversation with her husband, only the Government had access to the exact contents of their messages, many of which are almost three years old. It is obvious that the Government only introduced selected portions of the messages to create the false appearance that Mrs. Toebbe was a flight risk, and the Court accepted the argument in toto. Based on the selected messages that the Government introduced, Mrs. Toebbe knew that she was referring to leaving the country because of political reasons,

which is her right but not one she exercised. However, because the messages were sent in March 2019, which was more than two years prior to the detention hearing, she did not have a verbatim memory of exactly what she said. Thus, without the actual messages her counsel could only proffer that her plans to leave the country were not related to the charges against her. She was placed in that position because the Government intentionally withheld the full texts. Critically, the Government cannot be allowed to put on partial, misleading evidence and make baseless arguments when it possesses information that is plainly contrary to what is presented to the Court. That is exactly what happened in this case and that alone is a substantial basis upon which this Court should reopen the detention hearing. This is new evidence shows Mrs. Toebbe is not a flight risk at all.

Second, though the Government knew precisely what Mrs. Toebbe said in her messages, its own witness, F.B.I. Agent Olinits, under oath, denied any knowledge of the undisclosed messages in which she cited political reasons for wanting to leave the country. During his re-direct examination by the Government, Agent Olinits stated the following:

> Q. And then finally with regard to the Signal messages that we referred to, there's a discussion in here about more than one plan; correct? Plan A and Plan B?
> A. Correct.
> Q. Do any of those plans refer to President Trump?
> A. No. Not that I know of.

(Testimony of P. Olinits, p. 72, attached hereto as Exhibit 1). Likewise, on re-cross examination by Mrs. Toebbe's counsel, Agent Olinits stated the following:

> Q. Sir, you just told us before that this isn't even all the messages. These are the ones you picked out.
> A. That's correct.
> Q. Correct. So on the exhibit that you picked out, there's nothing about Donald Trump?
> A. It has to do with them fleeing the country.
> Q. Well, that's the way you read it; right? And there are --

        A. That's what it says.
        Q. -- other messages that deal with leaving the country
        because of President Trump; right?
        A. I don't remember specifically but maybe.

(Testimony of P. Olinits, pp. 72-73, attached hereto as Exhibit 1).

In short, even though the Government knew full well that Mrs. Toebbe's messages had specifically referred to then-President Trump as her reason for wanting to leave the country, it allowed Agent Olinits to testify to the contrary and then Government counsel made vigorous arguments to the Court based upon that testimony. Agent Olinits' testimony had the purpose and effect of undercutting the credibility of Mrs. Toebbe's proffer that she fully intended to fight these charges and appear in Court to do so. To defeat that argument, the Government, denied that these additional messages even existed hedging their bets with a "maybe." The Government's effort proved effective, although unfairly so, as the Court's Detention Order makes no reference to Mrs. Toebbe's proffer. Instead, the Detention Order only cites the selected, incomplete messages offered by the Government. Therefore, Mrs. Toebbe's detention hearing should be reopened so that the Court can consider evidence and argument based on the newly disclosed messages. Only then would the Court be able to properly evaluate whether she should be released pending trial.

### III. The Court Should Reopen the Detention Hearing to Determine Whether the Government has Obtained Exculpatory Evidence.

As stated in Mrs. Toebbe's motion to reopen her detention hearing, she has good reason to believe that her husband has recently informed the Government that she is innocent, which would confirm the substance of the letter that was provided to the Court from Mr. Toebbe as new evidence. If Mrs. Toebbe is correct, her husband's statements would clearly constitute evidence that is material and bears upon the issue of whether the weight of evidence supports her

4

detention. Furthermore, the Government would be under an obligation to disclose this evidence to Mrs. Toebbe pursuant to Brady v. Maryland and this Court's Due Process Protections Act Order Regarding Brady Obligations [Doc 52]. The defense here has requested that evidence and the Government has stated that it will not provide such evidence, if it exists, until next year when the Court's scheduling order would require such production. This position is legally baseless as Brady imposes an obligation upon the Government to produce exculpatory evidence when it is obtained and when it can be helpful to the defense. Moreover, in the Government's response to Mrs. Toebbe's motion to reopen her detention hearing, it neither admits nor denies that her husband has made statements exculpating her. Therefore, the Court should reopen Mrs. Toebbe's detention hearing to determine if the Government has obtained exculpatory evidence, and, if so, whether it lessens the weight of the evidence against her such that she should be released pending trial.

In addition, the Government can tell the Court if Mr. Toebbe has told the Government where the alleged "missing money" or "secrets" may be thus undercutting another factor the Court considered in denying pretrial release. The Court heard much argument at the detention hearing that the Government was concerned that Mrs. Toebbe would take the "missing money" and 'secrets" and flee the country. All of this was based upon pure conjecture that Mrs. Toebbe knew where any money may be or that she had knowledge of the secrets that Mr. Toebbe apparently stole from the Navy. If Mr. Toebbe has provided this information to the FBI or even told the FBI where to retrieve the money and secrets, the defense should know and the Court should reopen this hearing based upon a failure of proof. More critically, the Court should want to know if Mr. Toebbe has fully exculpated his wife. Given what Mr. Toebbe has stated in his letter, it is reasonable to believe that he has told the Government that his wife was fully unaware

5

of his illegal actions and is innocent. Given the admitted lack of other evidence against Mrs. Toebbe, it is difficult to see how the Government bears its burden of proof that Mrs. Toebbe was a knowing and willing participant in her husband's criminal activity.[1]

The Court, in this regard, will recall that at the time of the detention hearing, the Government admitted that other than Mrs. Toebbe's presence at three of the four drops and an email message that she did not write or review, there is no evidence to support these charges.

> Q. Other than your suspicion, based upon your training and experience, that she was present when these three dead drops took place and that she had a phone on airplane mode, you don't have any evidence whatsoever that she knew what Mr. Toebbe was doing with any of these plans that he took with him from the Navy Yard, do you?
> A. No -- no listening -- recorded plans.
> Q. No anything. You don't have anything, do you?
> A. Again, we have a lot of digital evidence to review at this time.
> Q. Did it occur to you as part of your investigation that maybe Mr. Toebbe was telling her he was up to something other than espionage against the United States?
> A. I think that would be a difficult thing to sell but maybe.
> Q. But maybe. Mrs. Toebbe never had access to any classified information at all, did she?
> A. She did not.
> Q. Right. She wasn't stealing information from the Navy Yard and taking it out and bringing it home, was she?
> A. No.
> Q. Right. You don't have any evidence she ever even went to the Navy Yard or any other facility where these documents for the $3 billion submarine might have come from; correct?
> A. Correct.
> Q. Never, never in her life did this woman have access to any classified information whatsoever?
> A. She never had a clearance, no.
> Q. Okay. And you don't know of any discussions that she may have had with her husband about whether he stole classified information from the federal government; right?
> A. I don't believe so.

---

[1] It is also reasonable to believe that Mr. Toebbe has told the Government what "Plan A" and "Plan B" relates to and that those discussions had absolutely nothing to do with espionage or the charges in this case.

6

(Testimony of P. Olinits, pp. 60 Line 13 – Page 61 Line 18, attached hereto as Exhibit 2).

It was Mr. Toebbe alone who had access to the sensitive information in this case and it was Mr. Toebbe who apparently stole the information and tried to sell it. But that fact alone does not mean Mrs. Toebbe, a high school humanities teacher, is guilty of espionage.

In its opposition, the Government repeats all of the allegations in the Indictment as if they were all true. But Mr. Toebbe is presumed innocent and there is no presumption of detention in this case under the statute. The Government also asks the Court to ignore the new fact that the family has offered to provide $100,000.00 in cash to post as a bond. This money was not available at the time of the original detention hearing and offers the Court substantial security to insure Mrs. Toebbe's appearance at all proceedings in this case. The provision of this bond imposes substantial hardship on Mrs. Toebbe's aging parents, and the Court can know that she would never abscond with such risk on her parents. In addition, Mrs. Toebbe has two sons to care for who need their mother and the prospect of her fleeing the country, as baseless as that charge may be, is greatly mitigated by her family connections and loyalty to her parents. In the end, there is no reason to hold Mrs. Toebbe while the Government investigates its case.

For all the foregoing reasons, Mrs. Toebbe respectfully requests a hearing date on this motion at the Court's earliest convenience.

**DEFENDANT**
**By Counsel**

/s/ Barry P. Beck
Barry P. Beck
Power, Beck & Matzureff
308 West Burke Street
Martinsburg, WV  25401
(304) 264-8870

Edward B. MacMahon, Jr.
107 E. Washington Street
PO Box 25
Middleburg, VA 20118
(540) 687-3902

## CERTIFICATE OF SERVICE

      I, Barry P. Beck, counsel for Defendant, hereby certify that on the 16th day of December, 2021, the foregoing **DEFENDANT DIANA TOEBBE'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO REOPEN DETENTION HEARING** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                  /s/ Barry P. Beck
                                                  Barry P. Beck