**FILED**

FEB 1 4 2022

U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401



**United States Department of Justice**

*William Ihlenfeld*
*United States Attorney's Office*
*Northern District of West Virginia*

United States Courthouse
1125 Chapline Street          Phone: (304) 234-0100
P.O. Box 591                  FAX:   (304) 234-0111
Wheeling, WV 26003

Nicholas J. Compton, Esq.
Assistant Federal Public Defender
MVB Bank Building
651 Foxcroft Avenue, Ste. 202
Martinsburg, WV 25401
*VIA E-MAIL DELIVERY*

February 10, 2022

In re:   United States v. Jonathan TOEBBE, Criminal No.: 3:21-CR-49-001

Dear Mr. Compton:

    This will confirm conversations with you concerning your client, Jonathan Toebbe (hereinafter referred to as "Defendant" or "Mr. Toebbe"). All references to the "Guidelines" refer to the guidelines established by the United States Sentencing Commission, effective November 1, 1987, as amended.

    It is agreed between the United States and your client as follows:

    1.    Mr. Toebbe will plead guilty to Count One of the Indictment, Conspiracy to Communicate Restricted Data, in violation of Title 42, United States Code, Sections 2274(a) and 2014.

    2.    The maximum penalty to which Mr. Toebbe will be exposed by virtue of his plea of guilty to Count One is: imprisonment for a term of not more than life, a fine of not more than $100,000, and a term of supervised release of not more than five (5) years, pursuant to Title 42, United States Code, Section 2274(a) and Title 18, United States Code, Sections 3559(a)(1) and 3583(b)(1). Mr. Toebbe will also be required to pay a mandatory special assessment of $100 (Title 18, United States Code, Section 3013), which must be paid before the date of sentencing by money order, or certified check, made payable to the United States District Court. It is also understood that Mr. Toebbe might be required by the Court to pay the costs of any incarceration.

_____          2/11/22
Jonathan Toebbe, Defendant          Date

_____          2/11/22
Nicholas J. Compton, Esq.           Date
Counsel for Defendant

- 1 -

3.      Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree to the following binding term: **a sentence of imprisonment within the range of 151 to 210 months**. Each party may request a sentence anywhere within this range. The Court will determine the amount of the supervised release and any fine. The parties understand that if the Court does not accept the binding provisions of this paragraph, then Mr. Toebbe will have the right to withdraw his plea of guilty.

4.      Pursuant to Sections 6B1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that the base offense level is **Base Offense Level 37** pursuant to Section 2M3.1(a)(2) because the offense involved the communication of Restricted Data that was classified at the CONFIDENTIAL level.

Pursuant to Section 3B1.3 of the Guidelines, the parties hereby further stipulate and agree that there is a **two-level increase** in the offense level because Mr. Toebbe abused a position of public trust and used a special skill in a manner that significantly facilitated the commission and concealment of the offense.

The parties understand that pursuant to Section 6B1.4(d), the Court is not bound by the stipulations in this paragraph, and if not accepted by the Court, Mr. Toebbe will not have the right to withdraw his plea of guilty.

5.      The parties hereby stipulate and agree to the following facts:

Mr. Toebbe was employed by the Department of the Navy as a nuclear engineer and was assigned to the Naval Nuclear Propulsion Program, also known as Naval Reactors. The mission of Naval Reactors was to provide militarily effective nuclear propulsion plants and to ensure their safe, reliable, and long-lived operation. Naval Reactors was responsible for all aspects of the U.S. Navy's nuclear propulsion, including research, design, construction, testing, operation, maintenance, and ultimate disposition of naval nuclear propulsion plants, including Virginia-class submarines.

Mr. Toebbe held an active TOP SECRET//Sensitive Compartmented Information ("SCI") security clearance through the United States Department of Defense and an active Q clearance through the United States Department of Energy, which granted him to access to information involving or incorporating "Restricted Data" within the meaning of the Atomic Energy Act of 1954, 42 U.S.C. § 2011 et seq. Additionally, Mr. Toebbe received training on how to properly handle classified information and Restricted Data.

Mr. Toebbe worked with and had access to information concerning the Virginia-class submarine, including, but not limited to, information relating to militarily sensitive design elements, operating parameters, and performance characteristics of Virginia-class submarine reactors, which constitutes information involving or incorporating Restricted Data within the meaning of the Atomic Energy Act.

| _/s/ Jonathan Toebbe_ | 2/11/22 |
|---|---|
| Jonathan Toebbe, Defendant | Date |
| _/s/ Nicholas J. Compton_ | 2/11/22 |
| Nicholas J. Compton, Esq. | Date |
| Counsel for Defendant | |

During the charged period, Mr. Toebbe's wife, Diana Toebbe, knowingly and voluntarily joined the conspiracy to communicate Restricted Data to another person with the intent to secure an advantage to a foreign nation and committed multiple overt acts in furtherance of the conspiracy, including acting as a lookout while Mr. Toebbe serviced three dead drops, as described below.

a. *Proposal Package and Prelude to First Dead Drop*

In April 2020, Mr. Toebbe sent a package to a foreign country, referred to herein as COUNTRY1, which contained a sample of Restricted Data relating to U.S. Navy nuclear powered warships and instructions for establishing a covert relationship to purchase additional Restricted Data.

On February 10, 2021, Mr. Toebbe sent an encrypted email to an individual he believed to be a representative of COUNTRY1, stating, in part: "Let us discuss how to proceed."

On March 5, 2021, Mr. Toebbe sent an encrypted email to an individual he believed to be a representative of COUNTRY1, proposing an electronic exchange of Restricted Data for a payment of $100,000 in cryptocurrency and stating, in part: "[P]lease remember I am risking my life for your benefit and I have taken the first step."

On April 9, 2021, Mr. Toebbe sent an encrypted email to an individual he believed to be a representative of COUNTRY1, requesting "some physical signal" to verify the individual's identity as a representative of COUNTRY1.

On or about May 29, 2021, Mr. Toebbe traveled to the Washington, D.C. area and viewed the signal that had been placed at a location associated with COUNTRY1.

On May 31, 2021, Mr. Toebbe sent an encrypted email to an individual he believed to be a representative of COUNTRY1, requesting details for a physical dead drop of Restricted Data.

On June 8, 2021, Mr. Toebbe sent an encrypted email to an individual he believed to be a representative of COUNTRY1 and provided a cryptocurrency payment address for a good faith payment of $10,000 prior to the disclosure of any additional Restricted Data.

On June 17, 2021, Mr. Toebbe sent an encrypted email to an individual he believed to be a representative of COUNTRY1, acknowledging receipt of the good faith payment of $10,000 in cryptocurrency and inviting instructions for a physical dead drop of Restricted Data.

_____    2/11/22
Jonathan Toebbe, Defendant          Date

_____    2/11/20
Nicholas J. Compton, Esq.           Date
Counsel for Defendant

b. *First Dead Drop*

On June 26, 2021, in Jefferson County, West Virginia, Mr. Toebbe serviced a dead drop by leaving behind Restricted Data relating to militarily sensitive design elements, operating parameters, and performance characteristics of Virginia-class submarine reactors on an SD card, which was wrapped in plastic and concealed between two slices of bread on a half of a peanut butter sandwich. The SD card also contained a typed message that included statements, "I hope your experts are very happy with the sample provided," and "I want our relationship to be very successful for us both." On this date, Ms. Toebbe provided cover and acted as a lookout for Mr. Toebbe while he serviced the dead drop.

On June 28, 2021, Mr. Toebbe sent an encrypted email to an individual he believed to be a representative of COUNTRY1 and provided a cryptocurrency payment address for a payment of $20,000 for the Restricted Data he left at the dead drop.

On June 29, 2021, Mr. Toebbe sent an encrypted email to an individual he believed to be a representative of COUNTRY1 and provided the decryption key for the SD card left at the dead drop.

c. *Second Dead Drop*

On July 31, 2021, in south-central Pennsylvania, Mr. Toebbe serviced a dead drop by leaving behind a typed message, which proposed a plan for him to provide 51 packages over time in exchange for a total of $5 million paid in cryptocurrency. The message also included statements that the information "was slowly and carefully collected over several years" and "smuggled past security checkpoints a few pages at a time" and that one of the sets of information "reflects decades of U.S. Navy 'lessons learned' that will help keep your sailors safe." On this date, Ms. Toebbe provided cover and acted as a lookout for Mr. Toebbe while he serviced the dead drop.

d. *Third Dead Drop*

On August 27, 2021, Mr. Toebbe sent an encrypted email to an individual he believed to be a representative of COUNTRY1 and provided a cryptocurrency payment address for a payment of $70,000 for the Restricted Data he would leave at a dead drop the next day.

On August 28, 2021, in eastern Virginia, Mr. Toebbe serviced a dead drop by leaving behind Restricted Data relating to militarily sensitive design elements, operating parameters, and performance characteristics of Virginia-class submarine nuclear reactors on an SD card, which was concealed in a chewing gum package. The SD card also contained a typed message, stating, in part: "There is only one other person I know is aware of our special relationship, and I trust that person absolutely"; "I was extremely careful to gather the files I possess slowly and naturally in the routine of my job, so nobody

_____      2/11/22
Jonathan Toebbe, Defendant               Date

_____      2/11/22
Nicholas J. Compton, Esq.               Date
Counsel for Defendant

would suspect my plan"; "I do not believe any of my former colleagues would suspect me, if there is a future investigation"; and "We have cash and passports set aside for th[e] purpose" of having to flee the United States. The reference to the "only one other person" aware of Mr. Toebbe's relationship was a reference to his wife, Ms. Toebbe.

On August 29, 2021, Mr. Toebbe, after receiving a cryptocurrency payment in the amount of $70,000, sent an encrypted email to an individual he believed to be a representative of COUNTRY1 and provided the decryption key for the SD card left at the dead drop.

  e. *Fourth Dead Drop*

On October 9, 2021, in Jefferson County, West Virginia, Mr. Toebbe serviced a dead drop by leaving behind an SD card, which was concealed in a chewing gum package. Mr. Toebbe previously informed an individual who he believed to be a representative of COUNTRY1 that he would provide information containing Restricted Data at this time and location. On this date, Ms. Toebbe provided cover and acted as a lookout for Mr. Toebbe while he serviced the dead drop.

  6. Mr. Toebbe waives any right to have sentencing determinations made by a jury and for a jury determination of any and all facts relevant to the application of the United States Sentencing Guidelines provisions and consents to the application of the Guidelines, in conformity with United States v. Booker, 543 U.S. 220 (2005), and to a determination of any and all facts and a resolution of the application of any and all Guidelines factors by the United States District Judge. Mr. Toebbe further agrees that the District Judge should make any sentencing determinations, including, but not limited to, Guidelines determinations, using the preponderance of the evidence standard.

  7. Mr. Toebbe will be completely forthright and truthful with regard to all inquiries made of him and will give signed, sworn statements and testimony, including but not limited to, appearances at grand jury, trial, sentencing and other proceedings. Mr. Toebbe will agree to submit to a polygraph examination if requested to do so by the United States Attorney's Office for the Northern District of West Virginia.

Moreover, Mr. Toebbe agrees to provide access to and consent to search all electronic devices and accounts owned, possessed, and/or controlled by him and any files contained therein. The electronic accounts include but are not limited to all ProtonMail accounts.

In addition, Mr. Toebbe agrees to assist federal officials with locating and retrieving the $100,000, which the FBI paid to him via Monero cryptocurrency in exchange for the Restricted Data. In this regard, Mr. Toebbe voluntarily abandons all right, title, interest, and claim to the $100,000.

| _____ | 2/11/22 |
| Jonathan Toebbe, Defendant | Date |
| _____ | 2/11/22 |
| Nicholas J. Compton, Esq. | Date |
| Counsel for Defendant | |


    Finally, Mr. Toebbe agrees to assist federal officials with locating all classified information and Restricted Data, in any form possessed and/or controlled by him or contained in premises, including electronic devices and accounts, possessed and/or controlled by him.

    8. Nothing contained in any statement or any testimony given by Defendant, pursuant to Paragraph 7, will be used against him as the basis for any subsequent prosecution. Defendant understands that the use immunity granted in this agreement does not cover any statements or admissions that he committed, or was directly involved in committing, a crime of violence. This means that such statements or admissions can be used against the Defendant in any state or federal prosecution. In this regard, Defendant admits that, prior to the proffer, pursuant to Miranda v. Arizona, 384 U.S. 436 (1996), he has been adequately advised and warned that any admission that he committed, or was directly involved in committing, a crime of violence is not covered by the use immunity under this agreement. It is further understood that any information obtained from Defendant in compliance with this cooperation agreement will be made known to the sentencing court; however, pursuant to Guideline 1B1.8, such information may not be used by the Court in determining Defendant's applicable guideline range.

    This agreement does not prevent Defendant from being prosecuted for any violations of other Federal and state laws he may have committed should evidence of any such violations be obtained from an independent legitimate source, separate and apart from that information and testimony being provided by him pursuant to this agreement.

    In addition, nothing contained in this agreement shall prevent the United States from prosecuting Defendant for perjury or the giving of a false statement to a federal agent, if such a situation should occur by virtue of his fulfilling the conditions of Paragraph 7 above.

    9. Mr. Toebbe understands and agrees that he remains bound by all non-disclosure and security agreements he has executed regarding classified information as an employee of or contractor for the United States government.

    10. Mr. Toebbe understands and agrees that he shall not knowingly have contact with any foreign government, or agents thereof, except with the express written permission of the FBI, unless such contact is solely for the purpose of obtaining a visa for foreign travel, entering, and departing a foreign country through customs control, or otherwise related to lawful international travel. Mr. Toebbe shall not seek or knowingly accept, personally or through another person or entity, any benefit from any foreign government or agent thereof. Should such a benefit be received by Mr. Toebbe, or some person or entity on his behalf, he hereby assigns any such benefit to the United States.

| | |
|---|---|
| *[signature]* <br> Jonathan Toebbe, Defendant | 2/11/22 <br> Date |
| *[signature]* <br> Nicholas J. Compton, Esq. <br> Counsel for Defendant | 2/1/22 <br> Date |

11. As part of this plea agreement, and based upon the concessions of the United States in this plea agreement, Mr. Toebbe knowingly, willingly, and voluntarily gives up the right to seek any additional discovery. Further, Mr. Toebbe knowingly, willingly, and voluntarily waives all pending requests for discovery.

12. Mr. Toebbe understands and agrees that no later than 30 days following his sentencing hearing, he will, through his attorney, return to the United States all discovery provided by the United States in this case, with the exception of any unclassified materials this Office gives Mr. Toebbe and provides express, written permission to retain. The Government reserves the right to inspect the specific documents Mr. Toebbe wishes to retain to determine whether they are classified or otherwise must be returned to the Government. Except for materials the Government permits Mr. Toebbe to retain, Mr. Toebbe expressly consents to the United States destroying or retaining these items as it sees fit without notice to him.

13. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, Mr. Toebbe agrees to forfeit and abandon to the United States all of Mr. Toebbe's right, title, and interest in the following items that Mr. Toebbe agrees constitute money, property, and/or assets derived from or obtained by Mr. Toebbe as a result of, or used to facilitate the commission of, Mr. Toebbe's illegal activities: all papers, digital media, and electronic devices seized from his residence, his vehicles, and his Naval Reactors offices in October 2021.

14. At final disposition, the United States will advise the Court of Mr. Toebbe's forthrightness and truthfulness, or failure to be forthright and truthful, and ask the Court to give the same such weight as the Court deems appropriate. In addition, at the sentencing hearing, the United States will move to dismiss Counts Two and Three of the Indictment as they pertain to him.

15. Although this agreement contains a binding term regarding imprisonment, the United States will make the following <u>nonbinding</u> recommendations: 1) if Mr. Toebbe accepts responsibility, and if the probation office recommends a two-level reduction for "acceptance of responsibility," as provided by Guideline 3E1.1, the United States will concur in the recommendation; and 2) should Mr. Toebbe give timely and complete information about his own involvement and provide timely notice of his intent to plead guilty, permitting the United States to avoid trial preparation, and comply with all the requirements of this Agreement, the United States will recommend, if applicable, an additional one-level reduction for this "timely acceptance" of responsibility. In order to be eligible for this timely acceptance of responsibility, **Mr. Toebbe must execute this Plea Agreement on or before 5:00 p.m., February 11, 2022**, and return or fax an executed copy to the United States by that day and time.

_____  
Jonathan Toebbe, Defendant

2/11/22  
Date

_____  
Nicholas J. Compton, Esq.  
Counsel for Defendant

2/11/22  
Date

16. This Plea Agreement is effective when signed by the defendant, the defendant's attorney, and an attorney for the United States. The defendant agrees to entry of this Plea Agreement at the date and time scheduled with the Court by the United States (in consultation with the defendant's attorney). If the defendant withdraws from this agreement, or commits or attempts to commit any additional federal, state, or local crimes, or intentionally gives materially false, incomplete, or misleading testimony or information, or otherwise violates any provision of this agreement, then:

a. The United States will be released from its obligations under this agreement. The defendant, however, may not withdraw the guilty plea entered pursuant to this agreement.

b. The defendant will be subject to prosecution for any federal criminal violation, including, but not limited to, perjury and obstruction of justice, that is not time-barred by the applicable statute of limitations on the date this agreement is signed. Notwithstanding the subsequent expiration of the statute of limitations, in any such prosecution, the defendant agrees to waive any statute-of-limitations defense.

c. Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon any information provided, or statements made, by the defendant, and all such information, statements, and leads derived therefrom may be used against the defendant. The defendant waives any right to claim that statements made before or after the date of this agreement, including the statement of facts described above in Paragraph 5, or adopted by the defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines, or any other provision of the Constitution or federal law.

Any alleged breach of this agreement by either party shall be determined by the Court in an appropriate proceeding at which the defendant's disclosures and documentary evidence shall be admissible and at which the moving party shall be required to establish a breach of this Plea Agreement by a preponderance of the evidence.

17. Mr. Toebbe is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, and in exchange for the concessions made by the United States in this plea agreement, the defendant waives the following rights, if the Court sentences him pursuant to Paragraph 3 of this agreement:

a. The defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the defendant's conviction on any ground whatsoever. This includes a waiver of all rights to appeal the defendant's conviction on the ground that the statute(s)

_____  
Jonathan Toebbe, Defendant

_____  
Nicholas J. Compton, Esq.  
Counsel for Defendant

2/11/22  
Date

2/11/22  
Date

to which the defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s).

b. The defendant knowingly and expressly waives all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. To challenge the conviction or the sentence which is within the maximum provided in the statute of conviction or the manner in which it was determined in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255.

Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

The United States waives its right to appeal any sentence within range specified in Paragraph 3. Both parties have the right during any appeal to argue in support of the sentence.

18. The United States reserves the right to provide to the Court and the United States Probation Office, in connection with any presentence investigation that may be ordered pursuant to Rule 32(c) of the Federal Rules of Criminal Procedure, or in connection with the imposition of sentence should the Court, pursuant to Rule 32(c)(1), not order a presentence investigation, relevant information, including information regarding Mr. Toebbe's background, criminal record, the offenses charged in the Indictment and other pertinent data appearing at Rule 32(c)(2) of the Federal Rules of Criminal Procedure, as will enable the Court to exercise its sentencing discretion. The United States also retains the right to respond to any questions raised by the Court, to correct any inaccuracies or inadequacies in the anticipated presentence investigation report to be prepared by the Probation Office of the Court, and to respond to any written or oral statements made to the Court by Mr. Toebbe or his counsel.

19. Mr. Toebbe agrees that all monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States as provided for in Title 18, United States Code, Section 3613. Furthermore, Mr. Toebbe agrees to provide all requested financial information to the United States and the Probation Office and agrees to participate in any presentencing debtor examinations. Mr. Toebbe also authorizes the U.S. Attorney's Office for the Northern District of

_____      2/11/22
Jonathan Toebbe, Defendant     Date

_____      2/11/22
Nicholas J. Compton, Esq.     Date
Counsel for Defendant

West Virginia to access his credit report from any major credit reporting agency prior to sentencing, in order to assess the financial condition for sentencing purposes. Mr. Toebbe agrees, under penalty of perjury, to complete a financial statement to be returned with the plea agreement. If the Court imposes a schedule of payments, Mr. Toebbe agrees that it will be deemed to be merely a minimum schedule of payments, not the only method available to the United States to enforce the judgment. Mr. Toebbe agrees to participate in the Federal Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. In addition, Mr. Toebbe agrees that the United States may submit any unpaid criminal monetary penalty to the United States Treasury for offset, regardless of the defendant's payment status or history at the time of said submission.

20. The above nineteen (19) paragraphs constitute the entire agreement between Mr. Toebbe and the United States of America in this matter. **There are no agreements, understandings or promises between the parties other than those contained in this Agreement.**

Very truly yours,

WILLIAM IHLENFELD
United States Attorney

By: Jarod J. Douglas
Assistant United States Attorney

S. Derek Shugart
Trial Attorney

Matthew J. McKenzie
Trial Attorney

As evidenced by my signature at the bottom of the ten (10) pages of this letter agreement, I have read and understand the provisions of each paragraph herein and, hereby, fully approve of each provision.

Jonathan Toebbe, Defendant          2/11/22
                                    Date

Nicholas J. Compton, Esq.           2/11/22
Counsel for Defendant               Date