```
 1                IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

 3

 4   United States of America,

 5                        Plaintiff,

 6   vs.                        Criminal Action No. 3:21-cr-49-2

 7   Diana Toebbe,

 8                        Defendant.

 9

10            Proceedings had in the Plea Hearing in the

11   above-styled action on September 27, 2022, before the Honorable

12   Robert W. Trumble, Magistrate Judge, at Martinsburg,

13   West Virginia.

14

15                        APPEARANCES

16   On behalf of the United States of America:

17            Jarod J. Douglas
              Assistant United States Attorney
18            United States Attorney's Office
              P.O. Box 591
19            Wheeling, West Virginia 26003

20

21            Jessica Lieber Smolar
              Assistant United States Attorney
22            United States Attorney's Office
              700 Grant Street
23            Pittsburgh, Pennsylvania  15219

24   The defendant was present in person.

25   Proceedings reported by means of digital recording; transcript
     produced by computer-aided transcription.
```

1          <u>APPEARANCES</u> (Continued)

2

3  On behalf of the United States of America:

4          S. Derek Shugert, Esq.
           United States Department of Justice
5          950 Pennsylvania Avenue, NW
           Washington, DC  20530
6

7  On behalf of the defendant:

8

           Barry P. Beck, Esq.
9          Power, Beck & Matzureff Law Offices
           308 West Burke Street
10         Martinsburg, WV  25401

11

12         Jessica Carmichael, Esq.
           Carmichael, Ellis & Brock, PLLC
13         108 N. Alfred Street, 1st Floor
           Alexandria, VA  22314
14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Digitally-recorded proceedings in open court.)
 2                  (September 27, 2022, 9:04 A.M.)
 3                           - - -
 4         THE COURT:  Thank you.  Please be seated.  All right.
 5   Good morning, everyone.
 6      Chad, would you call the case for me, please.
 7         THE CLERK:  Certainly.  This is the case of the
 8   United States of America versus Diana Toebbe, Criminal Number
 9   3:21-cr-49, defendant 2.
10      The government is represented by counsel, Jarod Douglas,
11   Jessica Smoler, and Derek Shugert.  The defendant is present in
12   person and by counsel, Barry Beck and Jessica Carmichael.
13      Are the parties ready to proceed?
14         MR. DOUGLAS:  The government is ready, Your Honor.
15         MR. BECK:  Mrs. Toebbe is ready, Your Honor.
16         THE COURT:  All right.  Good morning, everyone.
17   We're scheduled for a binding plea to an indictment this
18   morning.  And as an initial matter, there may be people who are
19   monitoring this proceeding by electronic means, and I would
20   caution anybody that is or will be monitoring by electronic
21   means to mute their microphones and not to cause any disruption
22   during the course of this hearing.
23      So with that in mind, who will be speaking?  Well, I'll be
24   directing questions to both of you, but who will be primarily
25   speaking on behalf of the defense?  Mr. Beck, you?
```

1          MR. BECK:  I will, Your Honor.

2          THE COURT:  All right.  Very well.

3     Mr. Beck, it's my understanding that Ms. Toebbe desires to

4  plead guilty to the charge contained in Count 1 of the original

5  indictment; is that correct, sir?

6          MR. BECK:  It is, Your Honor.

7          THE COURT:  All right.  Thank you.

8     Ms. Toebbe, would you please stand, raise your right hand,

9  and be sworn by the clerk.

10     (The defendant was sworn in.)

11          THE DEFENDANT:  I do.

12          THE CLERK:  Thank you.

13          THE COURT:  Thank you.  Please be seated.

14     Ms. Toebbe, do you understand that you are under oath, and

15  if you answer any of my questions falsely, your answers may

16  later be used against you in another prosecution for perjury or

17  for making a false statement?

18          THE DEFENDANT:  I do.

19          THE COURT:  Do you understand that if you lie, it may

20  result in a higher sentence for you?

21          THE DEFENDANT:  I do.

22          THE COURT:  Now, during the course of this hearing,

23  I'm going to be asking you several questions.  At any point,

24  you should feel free to ask questions, ask for an explanation

25  if you do not understand my question, or ask me to pause the

1  proceedings so that you may confer with your counsel.  Do you

2  understand?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Would you state your full name for the

5  record, please.

6          THE DEFENDANT:  Diana Smay Toebbe.

7          THE COURT:  Ms. Toebbe, how old are you?

8          THE DEFENDANT:  I'm forty-six.

9          THE COURT:  And how much education have you had?

10          THE DEFENDANT:  I have a Ph.D.

11          THE COURT:  So you can read, write, and understand

12  English?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Have you recently been under the care of

15  a doctor, psychiatrist, or other medical professional for any

16  serious physical or mental illness, including treatment for an

17  addiction to drugs or alcohol?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Does any of the treatment that you've

20  received affect your ability to communicate with your

21  attorneys?

22          THE DEFENDANT:  No.

23          THE COURT:  Does it affect your ability to understand

24  the charges that are pending against you?

25          THE DEFENDANT:  No.

```
 1              THE COURT:  Did it affect your ability to participate
 2    in your defense of this matter?
 3              THE DEFENDANT:  No.
 4              THE COURT:  Did it affect your ability to understand
 5    the terms and conditions of the plea agreement that was offered
 6    by the government?
 7              THE DEFENDANT:  No.
 8              THE COURT:  Are you currently using any form of a
 9    controlled substance or any medication or alcohol that might
10    affect your ability to understand this proceeding?
11              THE DEFENDANT:  No.
12              THE COURT:  Mr. Beck, Ms. Carmichael, do either of
13    you have any reason to question the competence of your client,
14    Ms. Toebbe?
15              MR. BECK:  I do not, Your Honor.
16              MS. CARMICHAEL:  No, Your Honor.
17              THE COURT:  Ms. Toebbe, are you here today to enter a
18    guilty plea as part of a written plea agreement?
19              THE DEFENDANT:  I am.
20              THE COURT:  Ms. Toebbe, I find that you are competent
21    and capable of entering an informed plea.
22       Ms. Toebbe, my name is Robert Trumble.  I'm the United
23    States Magistrate Judge.  You are charged with a felony
24    offense.  You have the right to have this plea taken by an
25    Article III judge, sometimes called a district judge.  Only you
```

1  can give up that right, and I can only hear your plea if you

2  agree to it by signing a waiver.

3      Now, I have on my bench a waiver that appears to bear your

4  signature.  So first of all, did you, in fact, sign this

5  waiver?

6              THE DEFENDANT:  I did.

7              THE COURT:  Did you discuss it with your attorneys

8  before you signed it?

9              THE DEFENDANT:  I did.

10             THE COURT:  Do you understand the purpose for the

11  waiver is to allow me to hear your plea today; is that correct?

12             THE DEFENDANT:  I do.

13             THE COURT:  Did anyone force or pressure you into

14  signing the waiver?

15             THE DEFENDANT:  No, sir.

16             THE COURT:  Mr. Beck, Ms. Carmichael, do either of

17  you -- is it your understanding that your client agrees to the

18  waiver?

19             MR. BECK:  Yes, Your Honor.

20             THE COURT:  All right.  Thank you.  I find that the

21  waiver has been properly executed and direct that it be filed.

22      Now, Ms. Toebbe, do you understand that you have the right

23  to be represented by counsel at every stage of these

24  proceedings, including your sentencing, and if you could not

25  afford counsel, you have a right to have counsel appointed in

1  your behalf?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Mr. Beck, do you or any member of your

4  office represent anyone, including codefendants, who might be

5  interested in the outcome of this matter?

6          MR. BECK:  No, Your Honor.

7          THE COURT:  Ms. Carmichael, do you or any member of

8  your office or firm represent anyone who might -- including

9  codefendants, who might be interested in the outcome of this

10 matter?

11         MS. CARMICHAEL:  No, Your Honor.

12         THE COURT:  Thank you.

13    All right.  Ms. Toebbe, let me ask you some questions about

14 the representation that you've received.  Do you believe that

15 you've had adequate time to discuss your case fully with your

16 counsel?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Have they been able to answer your

19 questions about how best to proceed in this case?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Is there anything your lawyers have not

22 done which you have asked them to do?

23         THE DEFENDANT:  No.

24         THE COURT:  Are you completely satisfied with the

25 legal advice that you've received from Mr. Beck and

1    Ms. Carmichael?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Ms. Carmichael and Mr. Beck, during the

4    time that you represented Ms. Toebbe, has she been cooperative

5    with you?

6              MR. BECK:  She has, Your Honor.

7              THE COURT:  Have you had adequate time to discover

8    the government's case?

9              MR. BECK:  Yes, Your Honor.

10             THE COURT:  Have you had adequate time to consider

11   the possible defenses to the charge?

12             MR. BECK:  Yes, Your Honor.

13             THE COURT:  Do either of you know any viable defense

14   to the charge contained in Count 1 of the original indictment?

15             MR. BECK:  We do not, Your Honor.

16             THE COURT:  Have you had adequate time to consider

17   the possible sentences that may be imposed upon your client?

18             MR. BECK:  Yes, Your Honor.

19             THE COURT:  Have you discussed all of the issues I

20   just addressed with you with your client, Ms. Toebbe?

21             MR. BECK:  We have, Your Honor.

22             THE COURT:  All right.  Thank you.

23        All right.  We have a plea agreement in this case.

24        Mr. Douglas, will you be speaking on behalf of the

25   government?

1            MR. DOUGLAS:  Yes, Your Honor.

2            THE COURT:  All right.  Would you summarize the

3    contents of the plea agreement for the Court.

4            MR. DOUGLAS:  Yes, Your Honor.

5        Your Honor, I have here the original version of the plea

6    agreement for the Court's consideration.  It's dated September

7    19, 2022.  It's in letter form.  It's 8 pages and 20 paragraphs

8    in length.

9        In the first paragraph, the defendant agrees to plead

10   guilty to Count 1 of the indictment.

11       Count 2 informs her of the maximum penalties of that plea

12   of guilty, including the maximum term of imprisonment, the

13   maximum term of fine as well as supervised release.

14       That paragraph also covers her requirement to pay the

15   special assessment -- the mandatory special assessment and

16   reflects her understanding that she might be required to pay

17   the costs of any incarceration.

18       Paragraph 3, Your Honor, of course as we know, we're here

19   on the second plea agreement.  This is one paragraph that has

20   changed.  Whereas previously the binding term was not more than

21   36 months of imprisonment, it is now a sentence of imprisonment

22   of not more than the low end of the applicable guidelines

23   range.  Which that paragraph goes on to explain the parties'

24   reference to that term "low end" as meaning the lowest number

25   of months of imprisonment available in the applicable

1  guidelines range.  Of course, the Court still determines the

2  supervised release and the fine if any.

3      That paragraph continues to reflect the parties'

4  understanding that if the Court does not accept that binding

5  term, then this defendant has the right to withdraw her plea of

6  guilty.

7      Paragraph 4 remains the same.  It's the stipulation with

8  regard to the base offense level of 37 since all that was

9  involved here was confidential classified information.  There

10  was no top secret information involved.  Only confidential

11  classified information.

12      Paragraph 5 is new.  That is a paragraph in which the

13  government has agreed to move the Court for a downward

14  departure under Section 5K1.1 of the guidelines.  Specifically,

15  a request for a three-level reduction which is conditioned upon

16  the defendant fulfilling her obligations under the plea

17  agreement.

18      Paragraph 6, Your Honor, remains the same.  It's the

19  stipulation as to the facts supporting this plea agreement as

20  well as the factual basis for the plea.  And, again, the

21  parties have agreed that in lieu of calling a witness later

22  when the Court asks for a factual basis, the government will

23  simply proffer this factual stipulation.  But it generally,

24  again, because it's already been outlined before in court, I'll

25  kind of keep it high level.  It generally discusses when she

1  joined the conspiracy during the charged period, what the
2  conspiracy's object was, what her contribution to the
3  conspiracy was.  Then it goes into specific sort of overt acts
4  in support of the conspiracy that occurred on June 26, 2021, in
5  this district; July 31, 2021, outside of this district in
6  Pennsylvania; August 28, 2021 -- onto the next page, page 3 --
7  which occurred in Virginia; and then October 9, 2021, the last
8  dead drop that was involved in this case and the arrest which
9  also occurred in this district.
10     Paragraph 7 is the *Booker* waiver.  That remains the same.
11  To the extent there are any facts that need to be determined,
12  it would be determined by the sentencing judge by a
13  preponderance of the evidence.
14     Paragraph 8 reflects the defendant's agreement to be
15  completely forthright and truthful of all questions made of
16  her.  So it's a cooperation paragraph.  That goes on to have
17  other specific instances of cooperation that she's agreed to,
18  including helping to access the electronic devices, helping to
19  locate and retrieve the $100,000 that was paid by the FBI, and
20  helping to locate all the classified information.
21     Now, she has fulfilled those obligations I can report.  Of
22  course, we'd still keep this in the plea agreement in case
23  there's any other cooperation that is needed in the future, but
24  she has aided in the return of the $100,000 specifically.
25     Paragraph 9 includes the limited use immunity that goes

1  along with that cooperation that she'll be required to provide

2  under paragraph 8.

3     Paragraph 10 reflects her understanding and agreement that

4  she shall not have contact with any foreign government or

5  agents thereof except with the express written permission of

6  the FBI unless such contact is solely for the purpose of

7  obtaining a visa for foreign travel, entering and departing a

8  foreign country through customs control, or otherwise related

9  to lawful international travel.  She shall not accept any

10  benefit from any foreign agent.

11     Moving on to page 5, paragraph 11.  That paragraph reflects

12  the defendant's knowingly and voluntarily giving up any right

13  to additional discovery in this case; and if there are any

14  pending requests, which I don't believe there are, those are

15  waived as well.

16     Paragraph 12 reflects the defendant's understanding and

17  agreement that no later than 30 days following the sentencing

18  hearing, she will, through her attorneys, return to the United

19  States all discovery provided by the United States in this case

20  with the exception of any classified materials that this office

21  has given the defendant and for which we've provided express

22  written permission to retain.  That has other provisions

23  related to that topic ending in paragraph 12.

24     Paragraph 13 states that without limitation to the

25  government's right to forfeit all property subject to

 1  forfeitures permitted by law, she does forfeit and abandon

 2  right, title, and interest to some specific items.  Of course

 3  that's the papers, the digital media, and the electronic

 4  devices seized from her residence, her vehicles, and

 5  Mr. Toebbe's Naval Reactors offices in October of 2021.

 6      Paragraph 14 reflects the government agreement to advise

 7  the Court of the defendant's forthrightness and truthfulness or

 8  failure to be forthright and truthful and asks the Court to

 9  give it such weight as it deems appropriate.  That paragraph

10  also contains the government's agreement to move to dismiss the

11  remaining counts of the indictment against this defendant at

12  the sentencing hearing.

13      Paragraph 15 contains nonbinding sentencing recommendations

14  despite the fact that this is a binding plea agreement.

15  Specifically, that if the probation office finds she accepted

16  responsibility, which it has, and it should continue to do so,

17  that we will concur in that two-level reduction.

18      In addition, a third-level reduction for timely acceptance

19  of responsibility, which was conditioned upon the timely

20  execution of this plea agreement on or before September 23,

21  2022, and I can report that it was so timely executed.

22      Moving on to page 6, paragraph 16 covers when the plea

23  agreement is effective which is of course as soon as it is

24  signed.  It covers things that she could do that might cause

25  the release of the government's obligations under the plea

1   agreement, none of which has occurred, and sort of covers those

2   scenarios, however.

3       Paragraph 17 contains the appellate and habeas corpus

4   waivers in this matter, all of which are based upon the Court

5   sentencing the defendant pursuant to paragraph 3.  In other

6   words, pursuant to the binding term.  That paragraph is

7   separated into three subparagraphs.

8       Subparagraph A concerns the appeal of the conviction,

9   paragraph B -- subparagraph B concerns the direct appeal of the

10  sentence, and paragraph C concerns the habeas corpus or

11  collateral attack of both the conviction and sentence all of

12  which she waives, again, if the Court sentences her pursuant to

13  paragraph 3.

14      In paragraph 18, the government reserves the right to

15  provide the probation office with all relevant information with

16  regard to the background of this defendant.

17      Paragraph 19 concerns the -- any monetary penalties that

18  might be paid.  That paragraph remains the same as we

19  previously summarized.

20      Finally, paragraph 20 simply emphasizes that the above 19

21  paragraphs just outlined that's the entire agreement between

22  the parties.  There are no other agreements.

23      The plea agreement was in typeface font addressed to

24  Jessica Carmichael.  Mr. Beck, who went with the plea agreement

25  to the jail, crossed out Jessica Carmichael and wrote in his

1  name, and it appears to be signed by him and the defendant on

2  every page.  The government attorneys have signed on the final

3  page on behalf of the government.

4           THE COURT:  All right.  Thank you, Mr. Douglas.

5  Would you please tender the plea agreement to Mr. Beck, please.

6           MR. DOUGLAS:  So tendered.

7           THE COURT:  Thank you.

8      Mr. Beck, did Mr. Douglas provide a fair summary of the

9  entire agreement?

10          MR. BECK:  He did, Your Honor.

11          THE COURT:  Thank you.

12     Ms. Toebbe, do you understand what this agreement does?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand what this agreement

15  requires of you?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you have any questions about your plea

18  agreement?

19          THE DEFENDANT:  I do not.

20          THE COURT:  I'd like you to take a look at the plea

21  agreement that was just handed to your attorney.  First of all,

22  tell me how many pages are in the plea agreement.

23          THE DEFENDANT:  There are eight.

24          THE COURT:  And at the bottom of each page, there's a

25  signature line that appears to bear your signature.

1      Ms. Toebbe, is that your signature at the bottom of each

2  page?

3              THE DEFENDANT:  It is.

4              THE COURT:  Ms. Toebbe, were each of the paragraphs

5  of the plea agreement discussed with you prior to your reaching

6  an agreement with the government?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Now, do you understand that this is a

9  binding plea, meaning that you have agreed to be sentenced to a

10 sentence of imprisonment of not more than the low end

11 applicable guideline range, and the parties have referenced the

12 low end as meaning the lowest number of months of imprisonment

13 available in the applicable guideline range?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that because this is a

16 binding plea agreement, the sentencing court may accept the

17 plea agreement, reject it, or defer a decision until it has

18 reviewed your presentence report; and if the Court does not

19 accept the plea, you will have the right to withdraw your plea

20 of guilty?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you understand that under our concept

23 known as relevant conduct, the Court may take into account any

24 conduct, circumstances, and injuries relevant to the crime to

25 which you are pleading guilty?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Do you understand that under the terms of

3    the plea agreement, you and the government have stipulated that

4    the total relevant conduct of the defendant with regard to the

5    original indictment is a base offense level of 37 pursuant to

6    Section 2M3.1(a)(2) because the offense involved the

7    communication of restricted data that was classified at the

8    confidential level?

9            THE DEFENDANT:  Yes.

10            THE COURT:  Do you understand that the Court is not

11    bound by this stipulation, and if the Court does not accept

12    this stipulation, you don't have the right to withdraw your

13    guilty plea?

14            THE DEFENDANT:  Yes.

15            THE COURT:  As part of your plea agreement, do you

16    understand that you have stipulated to the facts as set forth

17    in paragraph 6 of your plea agreement --

18       And, Mr. Beck, would you show that to her.  It's paragraph

19    6 that begins on page 2 and continues to the middle of page 3.

20            MR. BECK:  She has it in front of her, Your Honor.

21            THE COURT:  Ms. Toebbe, is that the stipulation to

22    which you've agreed to?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Do you understand that under the terms of

25    the plea agreement, prior to sentencing and pursuant to Section

1   5K1.1 of the guidelines, the United States will move to depart

2   downward from the otherwise applicable guideline range; more

3   specifically, the United States will move the Court for a

4   three-level reduction pursuant to Section 5K1.1 of the

5   guidelines which is -- which agreement in this regard is

6   explicitly conditioned upon you fulfilling your obligations

7   under the plea agreement?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Do you understand that the terms of the

10   agreement -- that under the terms of the plea agreement, you

11   and the government have agreed that you will provide access to

12   and consent to search all electronic devices and accounts

13   owned, possessed, and/or controlled by you and files contained

14   therein; electronic accounts include but are not limited to all

15   Proton mail accounts?

16         THE DEFENDANT:  Yes.

17         THE COURT:  You also understand that pursuant to the

18   terms of the plea agreement, you and the government have agreed

19   that you will assist federal officials with locating all

20   classified information and restricted data in any form

21   possessed and/or controlled by you or contained in the

22   premises, including electronic devices and accounts possessed

23   and/or controlled by you?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that under the terms of

1  the plea agreement, you and the government have agreed that you

2  shall not knowingly have any contact with any foreign

3  government or agents thereof except with the express written

4  permission of the FBI unless such contact is solely for the

5  purposes of obtaining a visa or for foreign travel, entering or

6  departing a foreign country through customs control, or

7  otherwise related to lawful international travel; that you

8  shall not seek or knowingly accept personally or through

9  another person or entity any benefit from any foreign

10  government or agent thereof; and that such -- should such

11  benefit be received by you or some person or entity on your

12  behalf, you will assign such benefit to the United States?

13          THE DEFENDANT:  I understand.

14          THE COURT:  Do you understand that under the terms of

15  the plea agreement, you and the government have agreed that if

16  the defendant withdraws from this agreement, commits or

17  attempts to commit any additional federal, state, or local

18  crimes, or intentionally gives materially false, incomplete, or

19  misleading testimony or information, or otherwise violates any

20  provision of the agreement, the United States will be released

21  from its obligation under the agreement; the defendant,

22  however, may not withdraw the guilty plea entered pursuant to

23  this agreement; that the defendant will be subject to

24  prosecution for any federal criminal violation, including but

25  not limited to perjury and obstruction of justice, that is not

1  time-barred by the applicable statute of limitations on the

2  date the agreement was signed; and that any prosecution,

3  including prosecution that is subject to this agreement, may be

4  premised upon any information provided or statements made by

5  the defendant, and such information, statements, and leads

6  derived therefrom may be used against the defendant to further

7  waive any right to claim that the statements made before or

8  after the date of the agreement should be excluded or

9  suppressed under Federal Rule of Evidence 410, Federal Rule of

10  Criminal Procedure 11(f), the sentencing guidelines, or any

11  other provision of the constitution or federal law?

12          THE DEFENDANT:  I understand.

13          THE COURT:  Ms. Toebbe, does the written plea

14  agreement represent the complete agreement between you and the

15  government?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Is there anything that you and the

18  government have agreed to that is not contained in that written

19  document?

20          THE DEFENDANT:  No.

21          THE COURT:  Ms. Toebbe, do you want me to accept the

22  plea agreement?

23          THE DEFENDANT:  Yes.

24          THE COURT:  I find that the defendant, Ms. Toebbe,

25  understands and agrees with the terms contained in the plea

1    agreement.  I order the original plea agreement be filed as

2    part of the record in this case.

3        Mr. Beck, would you tender that to the clerk of the Court

4    for me.

5              MR. BECK:  Yes, Your Honor.

6              THE COURT:  Ms. Toebbe, have you received a copy of

7    the original indictment filed against you?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Have you had an opportunity to read that

10   indictment?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Would you like me to read the indictment

13   to you or waive -- will you -- or will you waive reading of the

14   indictment in open court?

15             THE DEFENDANT:  I waive that.

16             THE COURT:  All right.  Thank you.

17       Now, you are pleading to Count 1 of the original indictment

18   which charges you with conspiracy to communicate restricted

19   data in violation of Title 42, United States Code, Section

20   2274(a).

21       Ms. Toebbe, how do you plead to the charge contained in

22   Count 1 of the original indictment?

23             THE DEFENDANT:  Guilty.

24             THE COURT:  Now, before I accept your plea, I want to

25   make sure that there's a factual basis for your plea; that you

1  understand the nature of the charge against you and the

2  consequences of pleading guilty to the charge; that you

3  understand the constitutional and other legal rights you will

4  give up by pleading guilty; and that you are pleading guilty

5  voluntarily.

6     Ms. Toebbe, you are charged, again, in Count 1 with

7  conspiracy to communicate restricted data in violation of Title

8  42, United States Code, Section 2274(a).  Now, Title 42, United

9  States Code, Section 2274(a) states in its pertinent part as

10 follows:  "Whoever, lawfully or unlawfully, having possession

11 of, access to, control over, or being entrusted with any

12 document, writing, sketch, photograph, plan, model, instrument,

13 appliance, note, or information involving or incorporating

14 restricted data, communicates, transmits, or discloses the same

15 to any individual or person, or attempts or conspires to do any

16 of the foregoing, with the intent to injure the United States

17 or with the intent to secure an advantage to any foreign

18 nation, upon conviction thereof, shall be punished by

19 imprisonment for life or by imprisonment for any term of years,

20 or a fine of not more than $100,000 or both."

21    The term "restricted data" as defined in Title 42, United

22 States Code, Section 2014 means all data concerning design,

23 manufacture, or utilization of atomic weapons; the production

24 of special nuclear material; or the use of special nuclear

25 material in the production of energy but shall not include data

1    declassified or removed from the restricted data category

2    pursuant to Section 2162 of this title.

3       Do you understand the statute under which you've been

4    charged?

5          THE DEFENDANT:  I do.

6          THE COURT:  Now, if the government had to go to trial

7    in this case, the government would have to prove the following

8    elements of Title 42, United States Code, Section 2274(a)

9    against you beyond a reasonable doubt:  First, that you or

10    another person had possession of, access to, control over, or

11    entrusted with the restricted data; second, that you or another

12    person agreed to communicate, transmit, or disclose the

13    restricted data to any individual or person with the intent to

14    injure the United States or to secure an advantage to any

15    foreign nation which agreement constitutes a conspiracy; third,

16    that you knowingly and voluntarily participated in the

17    conspiracy; and fourth, that an overt act was committed in

18    furtherance of the conspiracy in the Northern District of

19    West Virginia.

20       Ms. Toebbe, do you understand the elements of the statute

21    under which you've been charged?

22          THE DEFENDANT:  I do.

23          THE COURT:  Now, Ms. Toebbe, considering those

24    definitions, do you consider yourself to be guilty of violating

25    Title 42, United States Code, Section 2274(a)?

1           THE DEFENDANT:  I do.

2           THE COURT:  Thank you.

3      Mr. Douglas, would you present your witness or proffer as

4    to what the government would have been able to prove in this

5    case.

6           MR. DOUGLAS:  Yes, Your Honor.

7      Your Honor, the parties have agreed that the government in

8    this instance will proceed by proffer, specifically proffering

9    the factual stipulation the Court has gone over with the

10   defendant.  It's in paragraph 6 of the plea agreement.  It says

11   that at some time during the charged period, Ms. Toebbe

12   knowingly and voluntarily joined a conspiracy with her husband,

13   Jonathan Toebbe, to communicate restricted data to another

14   person with the intent to secure an advantage to a foreign

15   nation and that she committed multiple overt acts in

16   furtherance of the conspiracy that paragraph 6 goes on to

17   specify, but specifically she acted as a lookout during three

18   dead drops that Mr. Toebbe serviced.

19      As the stipulation indicates in the plea agreement, at

20   least two of those occurred during the charged period in

21   Jefferson County, West Virginia, which is within the Northern

22   District of West Virginia, specifically on June 26, 2021, and

23   October 9, 2021.  Otherwise, the Court -- or the government

24   simply proffers the remaining paragraphs within paragraph 6 as

25   the factual basis for the plea.

```
 1              THE COURT:  Thank you, Mr. Douglas.
 2       Mr. Beck, Ms. Carmichael, do either of you have any
 3   objection to the proffer as made by the government which
 4   incorporates paragraph 6 of the plea agreement?
 5              MR. BECK:  We do not, Your Honor.
 6              THE COURT:  Ms. Toebbe, do you have any objection to
 7   the government's proffer as made which also incorporates
 8   paragraph 6 of your plea agreement?
 9              THE DEFENDANT:  No.
10              THE COURT:  Ms. Toebbe, is the proffer by the
11   government and the evidence that the government just presented
12   both in verbal form and in paragraph 6 substantially correct?
13              THE DEFENDANT:  Yes.
14              THE COURT:  Did the government's proffer accurately
15   reflect your involvement in what occurred?
16              THE DEFENDANT:  Yes.
17              THE COURT:  All right.  Ms. Toebbe, now I need you to
18   explain to me what you did that makes you guilty of conspiracy
19   to communicate restrictive data in violation of Title 42,
20   United States Code, Section 2274(a).
21              THE DEFENDANT:  During the time alleged in Count 1 of
22   the indictment, I knowingly and voluntarily joined a conspiracy
23   with my husband, Jonathan Toebbe, to communicate restricted
24   data to another person with the intent to secure an advantage
25   to a foreign nation.  And in furtherance of the conspiracy, I
```

 1    acted as lookout for my husband when he serviced three dead

 2    drops, one of which occurred in Jefferson County,

 3    West Virginia, which is within the Northern District of

 4    West Virginia.

 5              THE COURT:  And these acts occurred on or about from

 6    April 1, 2020, through on or about October 9, 2021, at or near

 7    Jefferson County in the Northern District of West Virginia?

 8              THE DEFENDANT:  That's correct.

 9              THE COURT:  Again, Mr. Beck, Ms. Carmichael, are you

10    satisfied that if this case went to trial, there would be no

11    meritorious legal defense to the charge?

12              MR. BECK:  We are, Your Honor.

13              THE COURT:  And are you satisfied Ms. Toebbe's

14    constitutional and other rights have been observed fully?

15              MR. BECK:  Yes, Your Honor.

16              THE COURT:  And do you concur in her now-stated

17    intention to enter a plea of guilty to this charge?

18              MR. BECK:  We do, Your Honor.

19              THE COURT:  Ms. Toebbe, I find that there is a

20    sufficient factual basis for your plea of guilty.

21       Now, Ms. Toebbe, do you understand that you are pleading

22    guilty to a felony offense; and if your plea is accepted,

23    you'll be adjudged guilty of that felony offense?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Do you also understand that such judgment

1    may deprive you of valuable civil rights such as your right to

2    vote, your right to hold public office, your right to serve on

3    a jury, and your right to possess a firearm or gun of any kind?

4              THE DEFENDANT:  I do.

5              THE COURT:  Have you discussed the statutory

6    penalties that you will face as a result of this charge?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Then you understand that you expose

9    yourself to a maximum penalty of imprisonment for a term of not

10   more than life; a fine of not more than $100,000; and a term of

11   supervised release of not more than 5 years?

12             THE DEFENDANT:  I do.

13             THE COURT:  Mr. Douglas, is there any mandatory

14   minimum sentence that the defendant exposes herself to by

15   pleading guilty to Count 1 of the original indictment?

16             MR. DOUGLAS:  No, Your Honor.

17             THE COURT:  All right.  Thank you.

18     Now, Ms. Toebbe, do you understand that supervised release

19   means that after imprisonment, you'll be supervised by the

20   probation office under conditions that will be set by this

21   Court?

22             THE DEFENDANT:  I do.

23             THE COURT:  Do you also understand that if you

24   violate any of the terms of your supervised release, the Court

25   may revoke the term of your supervised release and order you to

1   serve a term in prison?

2           THE DEFENDANT:  I do.

3           THE COURT:  Do you understand that you'll be required

4   to pay a special assessment of $100 for having been convicted

5   of a felony offense?

6           THE DEFENDANT:  Yes.

7           THE COURT:  And you understand that you've agreed as

8   a condition of your plea agreement to pay this special

9   assessment before the date of sentencing?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that you could pay --

12  be required to pay -- do you understand that as part of your

13  fine, you could be required to pay the cost of incarceration

14  and/or the cost of supervision upon release?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Have you discussed those costs with your

17  counsel?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Then you understand that it now costs

20  $3,688 per person per month for prison; $371 per person per

21  month for supervised release; and $2,980 per month per person

22  for a residential reentry center?

23          THE DEFENDANT:  I do.

24          THE COURT:  Do you understand that the Court has the

25  authority to order restitution in your case?

1             THE DEFENDANT:  Yes.

2             THE COURT:  And do you understand that the government

3    may seek forfeiture in your case?

4             THE DEFENDANT:  Yes.

5             THE COURT:  Do you understand that the forfeiture of

6    certain assets is part of the sentence that may be imposed in

7    your case?

8             THE DEFENDANT:  Yes, I do.

9             THE COURT:  Do you understand that pursuant to the

10   terms of paragraph 13 of your plea agreement, you've agreed to

11   forfeit and abandon to the United States all of Ms. Toebbe's

12   right, title, and interest in the following items that

13   Ms. Toebbe agrees constitutes money, property, and/or assets

14   derived from or obtained by Ms. Toebbe as a result of or used

15   to facilitate the commission of Ms. Toebbe's illegal

16   activities:  All papers, digital media, electronic devices

17   seized from her residence, her vehicles, and Mr. Toebbe's Naval

18   Reactor's offices in October of 2021?

19            THE DEFENDANT:  Yes.

20            THE COURT:  In addition, do you understand that you

21   agree to assist the federal officials in locating and

22   retrieving the $100,000 which the FBI paid to you via Monero

23   cryptocurrency in exchange for the restricted data; in this

24   regard, you voluntarily abandon all right, title, and interest

25   and claim to the $100,000?

```
1              THE DEFENDANT:  Yes.

2              THE COURT:  Ms. Toebbe, do you understand that by

3    pleading guilty, if you are not a citizen of the United States,

4    you may be removed from the United States, denied citizenship,

5    and denied admission to the United States in the future?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Now, do you understand that even though

8    this is a binding plea, the sentencing guidelines may still

9    play a role in your case because the Court can only accept a

10   plea agreement containing a specific sentence if it determines

11   that the sentence is appropriate under the United States

12   Sentencing Guidelines?

13             THE DEFENDANT:  I do.

14             THE COURT:  Have you and your attorneys discussed the

15   application of the U.S. Sentencing Guidelines to your case?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand that the Court may

18   defer deciding whether to accept the plea in your case until

19   after the presentence report has been completed?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that both you and the

22   government will have an opportunity to object to the

23   presentence report?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Do you understand that parole has been
```

1    abolished, and that if you are sentenced to prison, you will

2    not be released on parole?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand that in your plea

5    agreement, you've waived your right to have any sentencing

6    determinations made by a jury and for a jury to determine any

7    and all facts relevant to the application of the guidelines in

8    conformity with the Supreme Court case, *United States v.*

9    *Booker*?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you also understand that you agreed

12   for the United States district judge to determine any and all

13   facts and to make a resolution of the application of any and

14   all guideline factors?

15             THE DEFENDANT:  I do.

16             THE COURT:  Do you understand that you've agreed that

17   the district judge should make any sentencing determinations,

18   including, but not limited to, guideline determinations using

19   the preponderance of the evidence standard?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Now, Ms. Toebbe, do you understand that

22   in your plea agreement, you've agreed to give up your right to

23   appeal your sentence under many circumstances, and that is

24   provided that the Court sentence you pursuant to paragraph 3 of

25   your plea agreement being the binding term?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Ms. Toebbe, everyone found guilty of a

3    crime in federal court in this district has the right to appeal

4    their conviction and sentence to the Fourth Circuit Court of

5    Appeals in Richmond, Virginia.  In Richmond, a three-judge

6    panel reviews the conviction and sentence to see if it was done

7    correctly.

8       Do you understand that pursuant to the terms of paragraph

9    17-A of your plea agreement that you have knowingly waived all

10   right pursuant to Title 28, United States Code, Section 1291 or

11   any other statute or constitutional provision to appeal your

12   conviction on any ground whatsoever?

13         THE DEFENDANT:  Yes.

14         THE COURT:  This includes a waiver of your right to

15   appeal your conviction on the ground that the statute to which

16   you are pleading guilty is unconstitutional or on the ground

17   that the admitted conduct does not fall within the scope of the

18   statute.

19         THE DEFENDANT:  I understand.

20         THE COURT:  Do you understand that pursuant to

21   paragraph 17-B of your plea agreement that you have knowingly

22   and expressly waived all rights conferred by Title 18, United

23   States Code, Section 3742 to appeal whatever sentence is

24   imposed, including any fine, term of supervised release, or

25   order of restitution for any reason, including the

1    establishment of the advisory sentencing guideline range, the

2    determination of your criminal history, the weighing of the

3    sentencing factors, and any constitutional challenges to the

4    calculation and imposition of any term of imprisonment, fine,

5    order of forfeiture, order of restitution, and term or

6    condition of supervised release?

7             THE DEFENDANT:  Yes.

8             THE COURT:  Do you understand that you only have the

9    right to appeal your guilty plea if you believe it was unlawful

10   or involuntary or that there was some other fundamental defect

11   in the proceeding that was not waived in the plea agreement

12   itself?

13            THE DEFENDANT:  I do.

14            THE COURT:  However, you agree that your guilty plea

15   today is lawful and voluntary and that there has been no

16   fundamental defect in the proceedings that you're aware of; is

17   that correct?

18            THE DEFENDANT:  That's correct.

19            THE COURT:  Do you also understand that everyone has

20   the right to challenge their conviction or sentence or the

21   manner in which it was determined in a post-conviction

22   proceeding, sometimes called a habeas corpus petition or

23   collateral attack, under Title 28, United States Code, Section

24   2255?

25            THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that pursuant to the

2    terms of paragraph 17-C of your plea agreement that you have

3    waived your right to challenge the conviction or the sentence

4    which is within the maximum provided in the statute of

5    conviction or the manner in which it was determined in any

6    post-conviction proceeding, including any proceeding under

7    Title 28, United States Code, Section 2255?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that your only legal

10   remedies on appeal or collateral attack are for claims of

11   ineffective assistance of counsel or prosecutorial misconduct?

12         THE DEFENDANT:  I do.

13         THE COURT:  However, you agree that there is

14   currently no known evidence of ineffective assistance of

15   counsel or prosecutorial misconduct --

16         THE DEFENDANT:  I do.

17         THE COURT:  -- is that correct?

18         THE DEFENDANT:  Correct.

19         THE COURT:  Have you discussed the waiver of these

20   important appellate rights with your attorneys?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Having done so, do you still wish to

23   waive these rights?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Mr. Beck, Ms. Carmichael, do you believe

1   that the defendant fully understands the importance of the

2   rights she is waiving?

3           MR. BECK:  We do, Your Honor.

4           THE COURT:  All right.  Ms. Toebbe, do you understand

5   that should you find some basis on which to file an appeal,

6   with few exceptions, any notice of an appeal must be filed

7   within 14 days of judgment being entered in your case?

8           THE DEFENDANT:  I understand.

9           THE COURT:  Based on your responses, Ms. Toebbe, I

10  find that you understand the nature of the charge and the

11  consequences of a guilty plea to the charge.

12      Now, Ms. Toebbe, do you understand that you have the right

13  to continue to plead not guilty to the charge?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you also understand that by pleading

16  guilty, you give up your right to a speedy and public trial by

17  jury?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you also understand that by pleading

20  guilty, you give up your right to force the government to come

21  forward with witnesses and evidence against you?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that you would have

24  been presumed innocent until the government presented enough

25  evidence to satisfy both the judge and a jury beyond a

1  reasonable doubt of your guilt?

2          THE DEFENDANT:  I do.

3          THE COURT:  Do you understand that when you admit

4  your guilt as you have here, you relieve the government of the

5  burden of proving your guilt?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that you would have had

8  the right to the assistance of counsel at trial?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand that you and your

11  attorneys, Ms. Carmichael and Mr. Beck, would have had the

12  right to confront and cross examine your accusers and to test

13  the truth of what they said?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that by pleading

16  guilty, you give up that right?

17          THE DEFENDANT:  I do.

18          THE COURT:  Do you understand that had you desired to

19  go to trial and wished to call witnesses that you would have

20  been entitled to the services of the U.S. Marshal to bring

21  witnesses to court under subpoena?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that by pleading

24  guilty, you give up your right to call witnesses except at your

25  sentencing hearing?

1          THE DEFENDANT:  I do.

2          THE COURT:  Do you understand that you would have had

3  the right to go to trial and -- you understand that you would

4  have had the right to move to suppress or keep away from the

5  jury's hearing and consideration any evidence of any nature

6  that had been illegally or unlawfully obtained?

7          THE DEFENDANT:  I do.

8          THE COURT:  Do you understand that had you desired to

9  go to trial that you would have had the right to testify at

10 trial?

11         THE DEFENDANT:  Yes.

12         THE COURT:  However, you understand that you could

13 not have been compelled or forced to testify at trial?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you understand that you'd have had the

16 right to go to trial and remain silent; that is, not take the

17 witness stand or call any witnesses or present any evidence

18 whatsoever on your own behalf?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand that the Court would

21 have instructed the jury that they could not convict you

22 because you'd exercised your constitutional right to remain

23 silent but could only base their decision on an offer of proof

24 from the government?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that you give up your

2  right to a unanimous verdict from a jury?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Mr. Beck, Ms. Carmichael, do you believe

5  that Ms. Toebbe understands the consequences of her guilty

6  plea?

7          MR. BECK:  We do, Your Honor.

8          THE COURT:  Ms. Toebbe, I find that you understand

9  the constitutional and other legal rights you are giving up by

10 pleading guilty.

11     Now, Ms. Toebbe, knowing all of those things, do you still

12 wish to plead guilty at this time?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Has any person forced you, threatened

15 you, coerced you, intimidated you, or talked you into entering

16 a guilty plea against your will?

17         THE DEFENDANT:  No.

18         THE COURT:  Are you acting voluntarily and of your

19 own free will in entering this guilty plea?

20         THE DEFENDANT:  I am.

21         THE COURT:  Ms. Toebbe, are you pleading guilty

22 because you are guilty of the crime charged in Count 1 of the

23 original indictment?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Ms. Toebbe, has anyone promised you or

1  told you something that is different from what I've told you
2  today to get you to plead guilty?
3           THE DEFENDANT:  No.
4           THE COURT:  Is the plea the result of any promises
5  other than those promises specifically contained in your
6  written plea agreement?
7           THE DEFENDANT:  No.
8           THE COURT:  Are you pleading guilty to protect
9  anyone?
10          THE DEFENDANT:  No.
11          THE COURT:  Has anyone promised or predicted the
12  exact sentence which will be imposed upon you in this matter?
13          THE DEFENDANT:  No.
14          THE COURT:  Then you understand that at this time, no
15  one could know the exact sentence which will be imposed in your
16  case?
17          THE DEFENDANT:  I understand.
18          THE COURT:  Ms. Toebbe, have you been able to fully
19  understand what is going on in these proceedings today?
20          THE DEFENDANT:  Yes.
21          THE COURT:  Based on your responses, I find that your
22  guilty plea is voluntary.
23      Now, again, at this time, Ms. Toebbe, do you have any
24  questions or second thoughts about entering a plea of guilty to
25  this charge?

1          THE DEFENDANT:  I don't.

2          THE COURT:  Would you please stand.

3     How do you plead to Count 1 of the original indictment

4  charging you with conspiracy to communicate restricted data?

5          THE DEFENDANT:  Guilty.

6          THE COURT:  Thank you.  Please be seated.

7     In the case of United States versus Diana Toebbe, I find

8  that Ms. Toebbe is fully competent and capable of entering into

9  an informed plea.  I find that there is a sufficient factual

10 basis for her plea of guilty.  I find that Ms. Toebbe

11 understands the nature of the charge and the consequences of a

12 guilty plea to the charge.  I find that Ms. Toebbe understands

13 the constitutional and other legal rights she is giving up

14 because of her plea, and I find that Ms. Toebbe's plea is

15 voluntary.

16    While I defer accepting the terms of the plea agreement and

17 adjudging the defendant guilty to the sentencing court, I do

18 accept the plea of guilty to Count 1 of the original

19 indictment.

20    Ms. Toebbe, the sentencing court must consider the

21 following factors when determining the sentence that you will

22 receive:  The nature and circumstances of the offense; your

23 history and characteristics; the necessity of punishing you,

24 deterring you, protecting the public from you or providing you

25 with training, medical care, or other treatment; the kinds of

1   sentences and sentencing range established by the sentencing

2   guidelines; the need to give defendants with similar criminal

3   records similar sentences; and the need to provide restitution

4   to any victims of the offense.

5       In order to help the Court consider these factors, the

6   probation office is required to conduct a presentence

7   investigation of you and submit a report to the sentencing

8   court.  The information in this report might have an impact on

9   the sentence you ultimately receive.  I strongly encourage you

10  to discuss this process and your participation in the same with

11  your attorneys.

12      Ms. Toebbe, understand that you must not commit any crimes

13  between now and sentencing because there are additional

14  punishments that may be imposed for committing additional

15  crimes.  Do you understand?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Pursuant to Section 6A1 of the United

18  States Sentencing Guidelines, I order the probation office to

19  conduct a presentence investigation of Ms. Toebbe, prepare a

20  draft presentence investigation report, and disclose its

21  contents to the government and Ms. Toebbe.  I further direct

22  the probation officer and all parties comply with Federal Rule

23  of Criminal Procedure 32 and U.S. Sentencing Guideline Section

24  6A1.2 regarding deadlines for disclosure, objection, departure

25  motion, or sentencing statement and requirements.  The

1    sentencing court will set this matter for sentencing following

2    the receipt of the presentence report.

3        Counsel, if either of you or if any of you anticipate a

4    lengthy sentencing hearing, please notify the Court in advance

5    so that an adequate amount of time can be set aside for that

6    hearing.  Judge Groh normally sets hearings for approximately

7    45 minutes so if you anticipate a longer hearing, please file

8    an appropriate motion.

9            MR. DOUGLAS:  Thank you, Your Honor.

10           MR. BECK:  Understood, Your Honor.

11           THE COURT:  All right, Counsel, anything further we

12   need to address before we adjourn this morning?

13           MR. DOUGLAS:  Not by the government, Your Honor.

14           MR. BECK:  Not for Mrs. Toebbe, Your Honor.

15           THE COURT:  All right.  With that in mind, the

16   defendant is remanded to the custody of the U.S. Marshals

17   Service, and we stand adjourned.  Thank you.

18

19               (Hearing concluded at 9:45 A.M.)

20

21

22

23

24

25

1                              CERTIFICATE

2

3          I, Kate A. Slayden, Registered Professional Reporter

4   and Official Court Reporter of the United States District Court

5   for the Northern District of West Virginia, do hereby certify

6   that the foregoing is a true and correct transcript to the best

7   of my ability of the digitally-recorded proceedings had in the

8   above-styled action on September 27, 2022, as transcribed by

9   me.

10         I certify that the transcript fees and format comply

11  with those prescribed by the Court and Judicial Conference of

12  the United States.

13         Given under my hand this 6th day of December 2022.

14

15

16                          /s/Kate A. Slayden

17                          Kate A. Slayden, RPR, CCR
                            Official Reporter, United States
18                          District Court for the Northern
                            District of West Virginia

19

20

21

22

23

24

25